Filed 7/6/26  In re Cesar S. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

| | |
|---|---|
| In re Cesar S. et al., Persons Coming Under the Juvenile Court Law. | B343767 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>CESAR S., SR.,<br><br>Defendant and Appellant. | (Los Angeles County Super. Ct. No. 23CCJP04076A–B) |

APPEAL from the orders of the Superior Court of Los Angeles County.  Stephen C. Marpet, Commissioner. Affirmed.

Jamie A. Moran, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

## INTRODUCTION

Cesar S., Sr., (Father) appeals from the juvenile court's findings and orders from the December 6, 2024 review hearing terminating jurisdiction and granting sole legal and physical custody to Yolanda D. (Mother). On appeal, Father argues the juvenile court erred in not granting joint legal custody. The Department of Children and Family Services (DCFS) has taken no position in this appeal. Because the trial court could reasonably conclude Father had not substantially ameliorated the risk to his children to support joint custody, we conclude the juvenile court did not err.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Section 300 petition

Father and Mother are the parents of Cesar S., a boy born in May 2011 and C.S., a girl born in March 2014. Prior to the start of these proceedings, both children lived with their parents.

On November 20, 2023, DCFS responded to a referral regarding Father's alleged sexual abuse of the children's maternal cousin R.M., who was taken into protective custody on the same date. In DCFS's November 30, 2023 detention report, R.M. reported that Father's sexual abuse began shortly after he moved to the United States from El Salvador in 2021. R.M. was about 13 years old and male. Father threatened to have R.M. deported or not allow him to attend school if R.M. did not allow Father to "sexually molest him." The record indicates Father's sexual abuse of R.M. continued for two years until 2023 when DCFS filed its petition. R.M. accused Father of sexual abuse but Mother did not believe the allegation and instead told R.M. to leave the home. R.M. later stated he was "forced to run away from home out of fear" Father would continue to sexually abuse

2

him.  R.M. no longer resided in the family home, and he is not part of the petition.

In an interview with DCFS, Mother stated she did not believe her nephew was sexually abused by Father and said her nephew lied.  She also denied "kick[ing] [R.M.] out of the home" and instead said that R.M. ran away.  Father denied any sexual abuse.  DCFS also interviewed the children who denied "all forms of abuse and/or neglect."  However, Cesar reported that when he misbehaved, Father would discipline Cesar by hitting him with a belt, and that two weeks ago he was "whipped on his legs and buttocks" by Father.  The social worker observed no visible or suspicious marks or bruises on Cesar, and neither child displayed symptoms associated with any medical or emotional issues.

The trial court granted DCFS's request for an emergency removal order at the outset of the case.  Both Cesar and C.S. were placed in the home of the paternal aunt, Anna S.

Thereafter on November 29, 2023, DCFS filed a dependency petition for Cesar and C.S. under Welfare and Institutions Code section 300,[1] sections (a), (b), (d) and (j), alleging Father physically abused Cesar when he struck Cesar with a belt on the child's legs and buttocks (count a-1); Father sexually abused R.M. and Mother's response to the allegation endangered the children (count b-1); Mother failed to protect Cesar from Father's physical abuse (count b-2); Father repeatedly abused R.M. sexually since 2021, and Mother failed to protect the children by allowing Father to reside in the family home despite knowing the sexual abuse of R.M. (count d-1); and C.S. was at

---

[1]     All further undesignated statutory references are to the Welfare and Institutions Code.

risk of harm due to Father's physical abuse of Cesar and Mother's failure to protect the children by allowing Father to reside in the same home (count j-1).

## 2. Adjudicational and dispositional hearings

At the adjudicational hearing held on May 14, 2024, the juvenile court found true all allegations against the parents, including the sexual abuse allegations against Father. Although Father denied the allegations, the juvenile court, after reviewing the evidence including R.M.'s forensic interview, found substantial danger to Cesar and C.S. due to Father's sexual abuse of their cousin. While Father's counsel argued Father never sexually abused either of his own children and that they were "differently situated," the juvenile court rejected this argument and found the children to be at risk. The court ordered that the children continue to be detained from both parents and the visits be monitored.

At the dispositional hearing held on June 24, 2024, the juvenile court ordered release of both children to Mother on condition that Father not reside in the family home. The court took judicial notice of the sustained allegations of Father's sexual abuse of R.M. and removed the children from Father. The court ordered Mother to complete a parenting class, individual counseling, and sex abuse awareness counseling. As to Father, the court ordered him to complete a parenting class, a sex abuse for perpetrators program, and individual counseling "to address the issues of sex abuse and its [effects] on the family." The court further ruled that Father's visits with the children be monitored and prohibited Mother from monitoring Father's visits.

On June 24, 2024, Father appealed from the juvenile court's custody order. On January 22, 2025, Father's appellate

4

counsel filed a brief under *In re Phoenix H*. (2009) 47 Cal.4th 835, finding no arguable issue exists.  On March 7, 2025, after having received no additional briefs from Father, this court dismissed Father's appeal.

At the time of the December 6, 2024 status review report, Father finished a parenting program, participated in 13 sessions of sex abuse awareness counseling for perpetrators, and attended his ongoing individual counseling.  However, he had not completed either the sex abuse program or his individual counseling.  DCFS noted that Father was unable to continue paying for the program and the counseling so he stopped participating and did not complete them.  As to monitored visits, Father was only visiting with the children on Sundays due to his work schedule, but they had daily telephone calls.  Mother, in contrast, completed her case plan.

### 3.     Six-month review hearing

At the contested six-month review hearing held on December 6, 2024, the juvenile court found Mother complied with her case plan but Father did not, and ordered that jurisdiction be terminated with sole legal and physical custody to Mother.  DCFS recommended that the court terminate jurisdiction by granting joint legal custody with sole physical custody to Mother.  The court noted, "Mother's complied with all of the services that were ordered … and the issues that brought this [family] to court have been resolved."  Father's counsel requested that the case remain open or otherwise terminate jurisdiction with joint legal custody.  Father's counsel reiterated that Father had daily phone contact with the children and participated in weekly visits.  In denying Father's request, the court reasoned that Father still needed to complete the sex abuse for perpetrators program and

5

individual counseling, and that "[a]t this time, the order would be sole legal, physical and primary to [Mother]," and granted monitored visitation to Father.

The court further stated that for Father to make any changes to the orders, he would need to "complete everything [the court] ordered him to do which is the sex abuse for perpetrator program [and] individual counseling," and "[o]nce he's done that, he can go to family court and ask a judge to make any changes." The court terminated jurisdiction pending receipt of the custody order. On December 13, 2024, after receipt of the juvenile custody order, the juvenile court terminated jurisdiction over the children.

Father filed a timely appeal.

## DISCUSSION

On appeal, Father argues the juvenile court abused its discretion in denying him joint legal custody. He asserts he complied and made good progress with his case plan until he encountered funding issues. Based on our review of the record, Father failed to complete his court-ordered sex abuse counseling for perpetrators and individual counseling. Therefore, because the court could reason that Father posed risks to the children, we conclude the juvenile court did not abuse its discretion in granting sole legal custody to Mother.

### 1. Legal principles

When jurisdiction over a dependent child is terminated by the juvenile court, section 362.4 authorizes the juvenile court " 'to make custody and visitation orders [commonly referred to as an "exit order"] that will be transferred to an existing family court file and remain in effect until modified or terminated' " by the family court. (*In re Chantal S.* (1996) 13 Cal.4th 196, 203;

6

accord, *In re J.M.* (2023) 89 Cal.App.5th 95, 112 [§ 362.4 "governs the termination of juvenile court jurisdiction and related orders"].)

When making exit orders, the juvenile court's " 'focus and primary consideration must always be the best interests of the child.' " (*In re Maya L* (2014) 232 Cal.App.4th 81, 102–103; *In re J.M.*, *supra*, 89 Cal.App.5th at p. 112.)  In addition, " '[t]he juvenile court has broad discretion to make custody … orders' " when terminating jurisdiction.  (*In re J.M.*, at p. 112.)  We review the juvenile court's exit order for abuse of discretion.  (*In re Maya L.*, at p. 102; *In re N.M.* (2023) 88 Cal.App.5th 1090, 1094.)  The juvenile court's order will not be disturbed " ' unless the court " ' "exceeded the limits of legal discretion by making an arbitrary, capricious, or patently absurd determination." ' " ' " (*In re N.M.*, at p. 1094.)

## 2.    The juvenile court did not abuse its discretion in granting sole legal custody to Mother

Father does not contest Mother having sole physical custody but argues the court erred in denying him joint legal custody because he regularly participated in counseling sessions and "made good progress until his funding ran dry."

The juvenile court did not err in denying Father joint legal custody when it found Father had not made substantial progress with his case plan.  Father was found to have sexually abused his male nephew R.M. when R.M. was 13 years old.  Cesar was 13 years old at the time of the hearing, the same age when Father molested R.M.  Our record also indicates Father denied the allegation and maintained his denial at the adjudicational hearing.  Further, the completion of only 13 sessions of the sexual

7

abuse program supports the trial court's conclusion that Father had not ameliorated the risks to his children.

In summary, the juvenile court's findings and orders were based on the sexual abuse finding against Father and avoiding future risk of harm to Cesar and C.S. Because the juvenile court's custody orders were focused on the best interests of the children and are supported by the record, we find no abuse of discretion. (*In re J.M.*, *supra*, 89 Cal.App.5th at p. 112.)

## DISPOSITION

The juvenile court's exit orders are affirmed.

VIRAMONTES, J.

WE CONCUR:

WILEY, Acting P. J.

SCHERB, J.